992 F.2d 1216
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Joyce T. GARRETT, Plaintiff-Appellant,
v.
The CHILD GUIDANCE CENTER OF GREATER CLEVELAND, Defendant-Appellant.
 No. 92-3509.
 United States Court of Appeals, Sixth Circuit.
 April 22, 1993.
 
 Before MARTIN and SILER, Circuit Judges, and COFFIN, Senior Circuit Judge.*
 PER CURIAM.
 
 
 1
 Plaintiff, Joyce Garrett, filed an action for racial discrimination and emotional distress in connection with her discharge from employment by the defendant, The Child Guidance Center of Greater Cleveland. The Center filed a motion for summary judgment on the Title VII and the emotional distress claims.[1] The district court granted the Center's motion on the Title VII and emotional distress claims. Garrett now appeals the district court's grant of summary judgment. We affirm.
 
 
 2
 Under FED.R.CIV.P. 56(c), the district court must grant summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." Id. at 322-23. Our review of a district court's grant of summary judgment is de novo. Brooks v. Amer. Broadcasting Cos., Inc., 932 F.2d 495, 500 (6th Cir.1991). Moreover, we must view all evidence in the light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).
 
 
 3
 Joyce Garrett, a black woman, received a Master's Degree in Social Administration from Case Western Reserve University in 1979, and received certification as a Licensed Independent Social Worker in 1986. She began employment with the Child Guidance Center as a clinical social worker on August 19, 1985. The Child Guidance Center provides a psychiatric outpatient clinic for children, as well as diagnostic and treatment services, and consultation and education for children with emotional, learning, and behavioral problems.
 
 
 4
 Garrett's continued employment with the Center required satisfactory completion of a one-year probationary period. Early in her employment, Garrett's supervisors noticed deficiencies and inadequacies in her work performance. These inadequacies caused the Center to extend Garrett's probationary period by an additional three months. Apparently, Garrett's performance improved enough during the extended probationary period that she received full employment status on November 26, 1986. The letter notifying Garrett that her probationary status had ended indicated that her work was satisfactory. Nonetheless, Garrett's supervisors continued to notice substantial deficiencies in the quality of Garrett's work after she achieved full employment status. The Center attempted to correct the problems with Garrett's performance by providing additional training and counseling, in addition to individual sessions with her supervisors to review the status of her work.
 
 
 5
 Despite this assistance and continuous warnings from the Center, Garrett's work showed no improvement. Garrett continued to have problems with tardiness, inefficient case documentation and report writing, failure to manage time, and failure to plan and organize procedural charting. Moreover, the quality of her clinical work was deficient. The Center gave Garrett a final notice on May 2, 1988, advising her that she would be discharged if her performance did not improve within thirty days.[2] On June 14, the Center discharged Garrett, and it ultimately hired another black female to fill Garrett's position. On June 15, Garrett filed a charge with the EEOC, claiming discrimination in connection with her discharge. On January 5, 1989, the EEOC issued a finding of no probable cause in Garrett's charges. Garrett filed her Complaint with the district court on February 9, 1989. The district court granted the Center's motion for summary judgment on Garrett's Title VII and emotional distress claims based on the following reasoning: (1) Garrett failed to present a prima facie case of discrimination; (2) Garrett had presented no evidence that the Center's conduct was so extreme and outrageous as to support a claim for intentional infliction of emotional distress; and (3) discharge from employment does not support a cause of action in Ohio law for negligent infliction of emotional distress.
 
 
 6
 To succeed in a race discrimination case, "the plaintiff must first make out a prima facie case by producing evidence (1) that [s]he belongs to a racial minority, (2) that [s]he was satisfactorily performing [her] job, (3) that despite this performance [s]he was terminated, and (4) that [s]he was replaced by a non-minority worker." Becton v. Detroit Terminal of Consol. Freightways, 687 F.2d 140, 141 (6th Cir.1982), cert. denied, 460 U.S. 1040 (1983). See also McDonnell-Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). The plaintiff must prove the prima facie case by a preponderance of the evidence. Texas Dep't. of Community Affairs v. Burdine, 450 U.S. 248, 252-253 (1981). "[I]f the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Id. at 253 (citations omitted). "[S]hould the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Id.
 
 
 7
 Accordingly, the district court should grant summary judgment for a defendant if the undisputed facts demonstrate that the plaintiff cannot present a prima facie case of discrimination. See id. at 252-53. We recognize that the prima facie case method established in McDonnell-Douglas was not intended to be rigid, mechanized, or ritualistic, and that the proof will necessarily vary with each factual situation. Furnco Construction Corp. v. Waters, 438 U.S. 567, 575 (1978); Mills v. Ford Motor Co., 800 F.2d 635, 639 (6th Cir.1986). Nonetheless, "the plaintiff must establish at the prima facie stage that her discharge raised an inference of discrimination." Id.
 
 
 8
 We believe the district court correctly concluded that Garrett could not present, by the model we adopted in Becton, 687 F.2d at 141, a prima facie case of discrimination in connection with her discharge. The record is replete with evidence that Garrett was not satisfactorily performing her job. The Child Guidance Center attempted to correct the deficiencies in her work over a period of three years, yet any improvement shown by Garrett was short-lived. The letter notifying Garrett that her probationary period of employment had ended does not overcome the overwhelming evidence demonstrating Garrett's poor work performance. Moreover, once the Center discharged Garrett, it filled her position by hiring another black female. The evidence presented by Garrett simply does not create an inference of discrimination; therefore, the district court correctly granted summary judgment on Garrett's Title VII claim for racial discrimination.
 
 
 9
 "The Ohio courts have recognized a cause of action for negligent and/or intentional infliction of emotional distress, even absent some physical impact or injury, under circumstances where there is evidence of serious emotional trauma." Gagne v. Northwestern Nat'l Ins. Co., 881 F.2d 309, 317 (6th Cir.1989) (emphasis in original). See also Yeager v. Local Union 20, 6 Ohio St.3d 369, 374, 453 N.E.2d 666, 671 (1983) (intentional infliction of emotional distress); Paugh v. Hanks, 6 Ohio St.3d 78, 451 N.E.2d 759, 765 (1983) (negligent infliction of emotional distress). The Ohio Supreme Court has clearly defined 'serious emotional distress', Paugh, 6 Ohio St.3d at 78, 451 N.E.2d at 765, in the following manner:
 
 
 10
 Serious emotional distress describes emotional injury which is both severe and debilitating. Thus, serious emotional distress may be found where a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case.
 
 
 11
 Therefore, the term 'serious' "go[es] beyond trifling mental disturbance, mere upset or hurt feelings." Paugh, 6 Ohio St.3d at 78, 451 N.E.2d at 765. Mere allegations of sleepless nights, withdrawn feelings, and a generalized impression that one is not the same person as before are not sufficiently serious to support a cause of action either for intentional or negligent infliction of emotional distress. Gagne, 881 F.2d at 318.
 
 
 12
 To support her claim of intentional infliction of emotional distress against the Child Guidance Center, Garrett has alleged only that she experienced some sleepless nights and that she felt withdrawn or as if she were not the same person as before her discharge from the Center. In the face of the Center's motion for summary judgment, Garrett has not presented any specific evidence of serious and debilitating emotional trauma. Moreover, in the employment context, Ohio courts have declined to recognize claims for negligent infliction of emotional distress. See Hanly v. Riverside Methodist Hosps., 78 Ohio App.3d 73, 82, 603 N.E.2d 1126, 1132 (1991). Therefore, the district court correctly granted the Center's motion for summary judgment on Garrett's emotional distress claims.
 
 
 13
 The judgment of the district court is affirmed.
 
 
 
 *
 The Honorable Frank M. Coffin, United States Senior Circuit Judge for the First Circuit, sitting by designation
 
 
 [1]
 Garrett's Complaint contained five causes of action against the Child Guidance Center: (1) race discrimination in violation of Title VII, 42 U.S.C. § 2000e-2; (2) race discrimination in violation of 42 U.S.C. § 1983; (3) race discrimination in violation of 42 U.S.C. § 1981; (4) intentional infliction of emotional distress; and (5) negligent infliction of emotional distress. In a previous order, the district court granted summary judgment to the Center on Garrett's section 1983 claim and the Center's motion to dismiss for failure to state a claim upon which relief can be granted for Garrett's section 1981 claim. Garrett did not appeal these rulings
 
 
 [2]
 After receiving this notice, Garrett filed charges of race discrimination with the EEOC. The EEOC referred this charge to the Ohio Civil Rights Commission which later rendered a finding of no probable cause in Garrett's charges